

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 8, 2023

<u>BY ECF</u>

Honorable Sidney H. Stein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Jefry Silvestre,* **23 Cr. 249 (SHS)**

Dear Judge Stein,

      The Government respectfully submits this letter in advance of the August 15, 2023 sentencing of defendant, Jefry Silvestre. The defendant has pleaded guilty to one count of conspiracy to distribute narcotics, during which he used a firearm. For the reasons set forth below, the Government submits that a sixty-month term of imprisonment is sufficient but not greater than necessary to serve the purposes of sentencing.

    **I.**    **Background**

        **A. Offense Conduct**

      On November 18, 2023, the defendant was a part of a drug transaction that turned violent, leading to the death of the defendant's Co-Conspirator ("Co-Conspirator-1"), a known narcotics trafficker. On that day the defendant first agreed to act as a money courier for Co-Conspirator-1: the defendant transported thousands of dollars from Philadelphia, Pennsylvania to Manhattan, New York (which he had done on at least two prior occasions), where he met Co-Conspirator-1 in a first-floor apartment of a five-story residential building (the "Apartment").

      While in the Apartment, Co-Conspirator-1 told the defendant that he had arranged to sell approximately two kilos of cocaine to a certain person, who unbeknownst to them was a confidential source ("CS") working with law enforcement. Prior to the CS's arrival to the Apartment, the defendant agreed to act as armed security for the transaction: The defendant specifically reported to law enforcement that Co-Conspirator-1 directed him to arm himself with a loaded gun before the CS arrived at the Apartment, and the defendant did in fact pick up a loaded firearm in preparation for the CS's arrival.

Hon. Sidney H. Stein
August 8, 2023

Once the CS arrived at the Apartment, Co-Conspirator-1 showed the CS the narcotics and discussed the terms of the transaction. The CS then told Co-Conspirator-1, in sum and substance, that he was going to retrieve the cash for the transaction. At that time, the CS gave law enforcement a coded signal that there were narcotics in the Apartment. As the CS stood in the threshold of the Apartment's entrance door, the defendant approached the CS while carrying a loaded firearm and stood near him in the Apartment's vestibule area. Moments later, law enforcement officers entered the Apartment through the opened door. Upon entering the Apartment, law enforcement officers immediately encountered the defendant, who was carrying a loaded firearm. As the defendant was being restrained, the loaded firearm he was carrying fell to the floor. At that time, Co-Conspirator-1, who was in the living room/kitchen area further inside the Apartment, discharged a firearm in the direction of law enforcement officers who were standing in the vestibule near the open Apartment door. Law enforcement returned fired killing Co-Conspirator-1. Co-Conspirator-1 fired all the ammunition in the firearm that he was shooting. Moments before the shooting, an innocent bystander was standing at the mailboxes that were immediately in front of the opened Apartment door.

### B.  Procedural History and Guilty Plea

The defendant was arrested and detained on November 18, 2022, based on a complaint charging him with conspiracy to distribute narcotics in violation of 21 U.S.C. § 846, and firearms use, possession, and carrying in violation of 18 U.S.C. §§ 924(c) and 2 (ECF No. 1). On May 17, 2023, an information charging the defendant with conspiracy to distribute narcotics in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B), and 846 was filed.  (ECF Nos. 22.) On that day, the defendant pled guilty to Count One of the Information pursuant to a plea agreement (the "Plea Agreement").  In the Plea Agreement, the parties stipulated that the applicable Adjusted Offense Level is 23 and the defendant's Criminal History Category is I, resulting in a Guidelines range of 46 to 57 months' imprisonment. However, because Count One carries a mandatory minimum of sixty months' imprisonment, the stipulated Guidelines Range is sixty months' imprisonment (the "Guidelines Range"). (PSR ¶ 4.)

On July 25, 2023, the Probation Office issued the PSR, which also calculates that the Adjusted Offense Level is 23 and the defendant's Criminal History Category is I, which results in a Guidelines range of 46 to 57 months' imprisonment. However, because Count One carries a mandatory minimum of sixty months' imprisonment, the probation department calculated the Guidelines range as sixty months' imprisonment. (PSR ¶ 89.) The Probation Office recommends a sentence of sixty months' imprisonment and four years' supervised release. (PSR p. 17.) The defendant seeks a sixty-month sentence.

## II.    Discussion

### A.  Applicable Law

Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Gall v. United States*, 552 U.S. 38, 46, 49 (2007).  After calculating the Guidelines,

Hon. Sidney H. Stein
August 8, 2023

the district court must consider the seven factors outlined in 18 U.S.C. § 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims."

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

"In the ordinary case, the [U.S. Sentencing] Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 109 (2007); *see also United States v. Bryant*, 976 F.3d 165, 181 (2d Cir. 2020) ("In the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." (quoting *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006))).

### III.    A Sixty Month Term of Imprisonment is Necessary and Appropriate

The Government respectfully submits that the statutory sentencing factors set forth in Title 18, United States Code, Section 3553(a) weigh in favor of a sixty-month term of imprisonment. The factors particularly applicable here include the need for the sentence to reflect the nature and seriousness of the offense, to promote respect for the law, to provide just punishment, and to afford adequate deterrence to the defendant and others.  18 U.S.C. § 3553(a)(2)(A)-(C).

*First*, a sixty-month term of imprisonment would reflect the nature and seriousness of the conduct here. *See* 18 U.S.C. §§ 3553(a)(1), (2)(A). The defendant was a participant in an extremely serious crime—he decided to pick up a loaded firearm during a narcotics transaction that ended in the death of Co-Conspirator-1.

The defendant points to his age and limited criminal history to argue that a sixty-month term of imprisonment is greater than is necessary to achieve the goals of sentencing. While his youth (he was 22 at the time of the conduct) and minimal criminal history are certainly relevant factors in determining an appropriate sentence, it does not excuse, nor does it minimize the

Hon. Sidney H. Stein
August 8, 2023

seriousness of his conduct. The defendant had the opportunity to make different choices, but he chose criminality each time. The defendant decided to act as a money courier for a known narcotics trafficker on three occasions; he decided to remain in the Apartment even after being told that a narcotics transaction was imminent; he decided to approach the CS as the CS stood in the threshold of the Apartment; and most critically, the defendant decided to pick up a loaded firearm to provide protection for himself and Co-Conspirator-1 during that narcotics transaction.

The defendant's (and Co-Conspirator-1's) conduct placed not only law enforcement lives at risk, but also the lives of the other residents in the building. Indeed, a bystander was standing in the direct path of the gunfire mere moments before the shooting began. It is truly quite astonishing that no one else was harmed during the shootout. While the defendant seeks to minimize his role in the offense, the undisputed fact is that he participated in the transaction by picking up a loaded firearm to provide protection for himself and Co-Conspirator-1 while the CS was in the house. The defendant must face the consequences of his decisions.

Furthermore, the defendant's choice to participate in the deadly narcotics trade itself is deeply troubling. As the Court is aware, the narcotics trade is dangerous not only because of the associated violence, but also because of the deaths caused from illicit narcotics use. Deaths from drug poisoning are on the rise. Between 2010 and 2018, overdose deaths involving cocaine increased by approximately 251%.[1] In 2018, New York led the nation with 1,276 deaths resulting from overdoses involving cocaine.[2] In 2019, nearly 16,000 Americans died as a result of drug overdoses involving cocaine and currently, cocaine is involved in almost one in five overdose deaths.[3] Even short of death, the consequences of cocaine addiction can be crippling for a user: paranoia, psychosis, stroke, seizures, respiratory failure, and organ damage.[4] Cocaine harms not just its users, but also their family and friends and the broader communities to which they belong. For this reason, major drug crimes are among "the most serious" offenses proscribed by federal law. *United States v. Dillard*, 214 F.3d 88, 101 (2d Cir. 2000); *see also United States v. Colon*, No. 10 Cr. 197 (CM), 2020 WL 4496761, at *2 (S.D.N.Y. Aug. 4, 2020) (describing cocaine as "a highly addictive drug that destroys lives, families, and communities"); *United States v. Qayyem*, No. 10 Cr. 19 (KMW), 2012 WL 92287, at *4 (S.D.N.Y. Jan. 11, 2012) (describing study in preeminent medical journal in which cocaine was found to have "second-highest mean harm score of all twenty drugs [under study], after heroin").

Moreover, the resulting shootout and Co-Conspirator-1's death truly underscores the dangerousness and seriousness of the narcotics trade and firearm use. A sixty-month term of imprisonment is necessary and commensurate with the seriousness of the conduct at issue.

---

[1] *See* Drug Enforcement Administration, National Drug Threat Assessment (March 2021), *available at* https://www.dea.gov/sites/default/files/2021-02/DIR-008-1%202020%20National%20Drug%20Threat%20Assessment_WEB.pdf.

[2] *Id.*

[3] *See* Centers for Disease Control and Prevention, Drug Overdose, *available at* https://www.cdc.gov/drugoverdose/deaths/other-drugs.html.

[4] *See* National Institute on Drug Abuse, What Are the Long-Term Effects of Cocaine Use? (May 2016), *available at* https://www.drugabuse.gov/publications/research-reports/cocaine/what-are-long-term-effects-cocaine-use.

Hon. Sidney H. Stein
August 8, 2023

*Next*, a sixty-month sentence is necessary to deter the defendant and those similarly situated to the defendant, to promote respect for the law, and to provide just punishment. Drug crimes are lucrative, and the number of individuals willing to engage in such crimes for even modest profit is, unfortunately, too high.  Violent crime, including gun violence, is also far too prevalent. The instant offense, which includes both types of serious crime, highlight the pressing need for general deterrence and promoting respect for the law. Thus, it is critically important that the Court make clear — to the defendant and others — that participation in the dangerous and violent dug trade and possessing firearms will not be taken lightly and will be met with serious consequences.

## IV.  Conclusion

For the reasons set forth above, the Government respectfully submits that a term of sixty months' imprisonment would be sufficient but not greater than is necessary to achieve the goals of sentencing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by:

Camille L. Fletcher
Assistant United States Attorney
Southern District of New York
(212) 637-2383

cc: Neil Kelly, Esq. (via ECF)